UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LESLIE STIGEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:12-CV-249-JD |
| | ) |
| CAROLYN W. COLVIN, | ) |
| ACTING COMMISSIONER | ) |
| OF SOCIAL SECURITY,[1] | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Now before the Court is Leslie Stigen's May 16, 2012, complaint [DE 1], seeking judicial review of the Commissioner of Social Security's final decision denying him disability benefits. The matter is now fully briefed and ripe for adjudication: Stigen filed his opening brief on September 26, 2012 [DE 16], the Commissioner responded on January 7, 2013 [DE 22], and Stigen replied on January 17, 2013 [DE 23]. Because the ALJ failed to articulate his factual findings and build a logical bridge to his conclusion, the Court remands this case to the Commissioner for further consideration.

**I. PROCEDURAL HISTORY**

On September 14, 2010, Plaintiff Leslie Stigen presented his claim for Social Security Disability before an Administrative Law Judge. (Tr. 17). On January 14, 2011, the Administrative Law Judge ("ALJ") entered a decision finding that Stigen was not disabled from

---

[1] On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. Pursuant to Rule 25 of the Federal Rules of Civil Procedure, Carolyn W. Colvin is automatically substituted as the Defendant in this suit. No further action is necessary to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

December 14, 2007 through the date of the decision. (Tr. 25). The Appeals Council denied Stigen's appeal on April 24, 2012 [DE 14]. Stigen presents his Complaint to this Court on May 16, 2012 [DE 1]. For the reasons given below, the Court remands the matter to the Commissioner.

## II. BACKGROUND

**A.      Medical History**

Stigen is a high school graduate and was fifty-seven years old at the time he filed his claim for disability benefits. (Tr. 24). He worked as a landscaper for the Indiana Department of Transportation for around thirty-eight years. (Tr. 34, 160).

In 2006, after complaining of shortness of breath, Stigen's family physician, Dr. Frank Utes, diagnosed Stigen with asthmatic bronchitis. (Tr. 242). Dr. Utes had been Stigen's family physician since 1990 and had contact with Stigen on sixty-nine occasions from 1990–2010. Dr. Utes prescribed Albuterol and recommended hospitalization to treat Stigen's symptoms; however, Stigen refused to be admitted to the hospital. *Id.* In subsequent visits in April 2006, Stigen told Dr. Utes his ability to breathe had improved and his bronchitis was improving. (Tr. 242, 243).

Dr. Utes referred Stigen to Dr. Clint Kauffman, and on May 31, 2006, Dr. Kauffman performed a graded treadmill exercise exam on Stigen. (Tr. 202). The exercise lasted for almost ten minutes before Dr. Kauffman terminated the exercise when Stigen reached his target heart rate and became fatigued and short of breath. Dr. Kauffman noted Stigen's symptoms resolved "fairly promptly" once the exam ended. *Id.*

When Stigen complained of fatigue and shortness of breath in December 2006, Dr. Utes referred Stigen to the hospital for a pulmonary function test ("spirometry"). Stigen was tested and was thereafter administered with bronchodilator therapy. *Id.* After the therapy, Stigen was tested again and his breathing results were improved. *Id.* The report indicated Stigen possibly had early obstructive pulmonary impairment and recommended continued brochodilator therapy. (Tr. 206). This same test was administered in April 2008, and there was no significant change in breathing caused by the therapy. (Tr. 214).

In December 2007, Stigen was admitted to the hospital for four days and treated for acute exacerbation of asthmatic bronchitis. (Tr. 216). Hospital records indicate Stigen's condition had improved at the conclusion of his hospital visit. *Id.* Dr. Utes instructed him to avoid smoke, dust, and cold air. *Id.* After this incident, Stigen did not return for work.

Dr. Utes referred Stigen to Dr. Christina Barnes, a specialist in Clinical Immunology and Internal Medicine. Dr. Barnes noted Stigen's complaints of shortness of breath and chest tightness. (Tr. 251). She ran a spirometry on June 9, 2008, and the results of the test were normal.[2] *Id.* Dr. Barnes also noted that Stigen uses Albuterol four times a day. *Id.* Stigen told Dr. Barnes the Albuterol medication ameliorated his symptoms. *Id.*

On December 18, 2008, Stigen had chest pains, lightheadedness, palpitations, and heart racing. (Tr. 443). He was taken to the hospital for examination where Dr. Kurtis DeJong noted that he was short of breath. *Id.* However, Dr. DeJong also indicated that this symptom was not a change from Stigen's usual shortness of breath. *Id.*

---

[2] It is notable that on the day of Stigen's pulmonary test, he had not used Albuterol prior to the test. (Tr. 251).

Following this incident, Dr. Barnes evaluated Stigen's condition in a Pulmonary Residual Functional Capacity Questionnaire. In this report, Dr. Barnes stated Stigen had daily asthmatic attacks which generally lasted around fifteen minutes. (Tr. 363). She indicated that Stigen could tolerate moderate work stress. (Tr. 364). In her opinion, he could walk two to three blocks without rest or severe pain, could stand continuously for about one hour, and could stand or walk for about two hours total in an eight hour work day. (Tr. 364–65). Dr. Barnes also noted that Stigen could frequently carry up to twenty pounds in a competitive work situation and occasionally carry fifty pounds. (Tr. 365). Dr. Barnes opined that Stigen would have to take three to four unscheduled breaks a day lasting fifteen minutes. *Id.* She also suggested that allergens and cold air precipitated Stigen's asthmatic attacks and recommended Stigen avoid these elements. (Tr. 363, 367). Additionally, Dr. Barnes stated Stigen would be absent from work due to his impairment approximately three times a month. (Tr. 367).

In January 2009, Dr. Nasser gave Stigen a nuclear stress test. (Tr. 381). This stress test required Stigen to exercise, and after two minutes, Stigen began to exhibit shortness of breath. (Tr. 383). The test lasted eight and a half minutes, and the final report test summary indicates that Stigen had difficulty breathing (that is, he was "very dyspneic") during the first thirty seconds of recovery. *Id.* Stigen's shortness of breath began to resolve within four minutes of recovery. *Id.*

On August 23, 2010, Dr. Utes opined that Stigen's condition was "poor" and that he would be unable to return to work due to his asthmatic bronchitis. (Tr. 450). Dr. Utes also indicated that Stigen was permanently disabled. *Id.* Dr. Utes had made similar statements earlier in June 2010. (Tr. 378). On August 23, 2010, Dr. Utes also filled out a Pulmonary

4

Residual Functional Capacity Questionnaire and made the same observations as Dr. Barnes had in 2008. (Tr. 451-455).

At the hearing, Stigen testified he could walk two blocks before he begins having shortness of breath. (Tr. 36.) He plays the guitar and piano. (Tr. 38). He also exercises with ten pound dumbbells and does push ups and situps. (Tr. 41, 42).

Stigen also testified he was short of breath during the hearing because, among other factors, he was nervous, it was allergy season, and he had been sitting for several hours during the hearing. (Tr. 36-37). Stigen also implied he had not taken the inhaler during the hearing. (Tr. 38). During his testimony, Stigen asked to take his inhaler and was allowed to take the medicine. *Id.*

**B.**     **The ALJ's Decision**

In his written decision, the ALJ described and followed the familiar five step sequential evaluation process. Applying steps one through three, the ALJ found that Stigen had not engaged in substantial gainful activity since December 14, 2007 (step one) and that his asthmatic bronchitis was a severe impairment (step two) but did not automatically qualify him for disability benefits (step three) (Tr. 19–20). The ALJ then found that Stigen had the residual functional capacity ("RFC") to perform the full range of medium work, as defined in 20 CFR 404.1567(c), as long as he was in a clean air environment with no significant exposure to dust fumes, gases, humidity, extremes of heat or cold, or other respiratory irritants (Tr. 20).

To support this RFC finding, the ALJ then briefly discussed Stigen's testimony at the hearing and then turned to the medical evidence: that his asthmatic bronchitis causes shortness of breath and problems breathing; that he reported using his inhaler more; that cold and hot

5

weather, dust, wind, high humidity, and fatigue make it hard for him to breathe, even with medications; and that he experienced shortness of breath with various physical activities. (Tr. 21).

The ALJ next reviewed the objective medical evidence in the record. First, he noted that various Pulmonary Function Reports from 2006 to 2008 showed steady improvement, and that by 2008 Stigen's treating physician interpreted his pulmonary function tests as normal. (Tr. 21, citing Tr. 251). The ALJ also looked at Stigen's longitudinal record of treatment, noting hospitalization in December 2007 for acute exacerbation of asthmatic bronchitis, intermittent episodes of shortness of breath, and consistent increases in symptoms when the whether was humid or hot (Tr. 21–22). Based on this medical evidence, the ALJ concluded that "the longitudinal record [is not] supportive of his alleged symptoms at the frequency and severity he alleges." (Tr. 22). The ALJ did conclude there was clear evidence that environmental conditions aggravated Stigen's condition and noted that evidence regarding Stigen's medication and other treatments confirms the existence of impairments but "does not establish an inability to work at the level . . . assessed." (Tr. 22).

After stating his conclusion, the ALJ briefly surveyed the opinions of Stigen's treating physicians, Dr. Barnes and Dr. Utes. (Tr. 23). He recognized that Dr. Barnes identified environmental conditions as factors that precipitate symptoms, indicated daily asthma attacks, opined that Stigen would require three to four unscheduled breaks a day and be absent from work about three times a month, and imposed environmental restrictions. (Tr. 23). The ALJ did not, however, mention the standing and walking limitations opined by Dr. Barnes. The ALJ then stated that he "consider[ed] this opinion consistent with an inability to sustain work activities."

6

*Id.* The ALJ also noted Dr. Utes' 2008 opinion that Stigen could perform work with environmental restrictions and his 2010 opinion that Stigen was unable to work due to asthmatic bronchitis.

While he agreed with the environmental limitations, the ALJ declined to give "persuasive weight" to these two opinions. Instead, he concluded that the opinions that Stigen could not sustain any work activities contradict the medical history showing improvement in the frequency of his symptoms, normal pulmonary function tests, and adequate exercise capacity (Tr. 23). Finally, he noted the evaluations of state agency medical and psychological consultants and non-examining physicians were consistent with his opinion, though he acknowledged that the physicians did not have the benefit of reviewing the evidence submitted after the reconsideration hearing.

Based on this RFC finding, the ALJ concluded at step four that Stigen was unable to perform his past relevant work as a highway department worker (Tr. 24). At step five, however, the ALJ determined that Stigen could perform a significant number of jobs in the national economy and therefore found that Stigen was not disabled. Because the ALJ found that Stigen's ability to perform all or substantially all of the requirements of unskilled medium work, the ALJ asked a vocational expert whether jobs exist in the national economy for an individual with Stigen's age, education, work experience, and residual functional capacity—specifically, he asked the vocational expert to "assume that [the claimant] is limited to medium work in an essentially clean air environment with no significant exposure to dust, fumes, gases, humidity, extremes of heat or cold, or other respiratory irritants." (Tr. 163). The vocational expert indicated that there were unskilled medium exertion jobs in Indiana that Stigen could perform,

including cleaners (29,000 jobs), dining room attendants (7,300 jobs), and hand packers (7,200 jobs). (Tr. 164).

### III. Standard of Review

The ruling made by the ALJ becomes the final decision of the Commissioner when the Appeals Council denies review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). Thereafter, in its review, the district court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Id.* Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must

8

provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

Further, conclusions of law are not entitled to deference; so, if the Commissioner commits an error of law, reversal is required without regard to the volume of evidence in support of the factual findings. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

### IV. Analysis

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)-(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). If the claimant is performing substantial gainful activity or does not have a severe medically determinable impairment, or a

combination of impairments that is severe and meets the duration requirement, then the claimant will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i)-(ii).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a Listing is not met or equaled, in between steps three and four, the ALJ must then assess the claimant's residual functional capacity, which, in turn, is used to determine whether the claimant can perform her past work under step four and whether the claimant can perform other work in society at step five of the analysis. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

It is undisputed that Stigen is not currently engaged in a substantial gainful activity and has a medically severe impairment. Stigen also does not contest the ALJ's finding that his impairment does not meet the Listed Impairments. Instead, the Planitiff disputes the finding that Stigen's residual functional capacity was medium work. Additionally, Stigen asserts the ALJ did not adequately consider the opinions of Stigen's treating physicians. Stigen also claims the ALJ did not properly weigh the severity and frequency of his symptoms.

**A.     The ALJ's Consideration of Treating Physicians' Opinions Was Inadequate.**

Stigen disputes the ALJ's RFC finding, arguing that the ALJ improperly discounted the opinions of Stigen's treating physicians and failed to build a logical bridge from the evidence in the record to his conclusion. The ALJ has final responsibility for deciding a claimant's RFC,

10

which is a legal decision rather than a medical one. *See* 20 C.F.R. §§ 404.1546(c), 404.1527(e). A reviewing court is not to substitute its own opinion for that of the ALJ or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. *Haynes v. Barnhart,* 416 F.3d 621, 626 (7th Cir. 2005). An ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). However, an ALJ need not provide a written evaluation of every piece of testimony and evidence. *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995). An ALJ need only minimally articulate his justification for accepting or rejecting specific evidence of disability. *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004).

The ALJ found Stigen had an RFC of medium work, with limitations on his exposure to certain environmental conditions. (Tr. 20). Medium work is defined as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). "A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds." Social Security Ruling 83-10. Significant limitations on a claimant's ability to walk without experiencing fatigue, shortness of breath, or pain will also affect the ability to perform medium work. *See Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000) ("A person who cannot walk a block without panting cannot engage in medium work.").

Stigen argues the ALJ incorrectly applied 20 C.F.R. § 404.1527 by failing to adequately consider the treating doctors' medical opinions. A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if the opinion is supported by the medical findings and consistent with substantial evidence in the record. *Skarbek v. Barnhart,* 390 F.3d 500, 503 (7th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)). Even when not entitled to controlling weight, the Social Security regulations dictate that the ALJ generally "give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairments and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultive examinations . . . ." 20 C.F.R. § 404.1527(c)(2).

However, while a treating physician's opinion is important, it is not the final word on a claimant's disability. *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). An ALJ, thus, may discount a treating physician's medical opinion if it is internally inconsistent or inconsistent with other evidence in the record. *Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000). An ALJ may also discount a treating physician's opinion if it reveals bias due to sympathy for the patient. *See Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001). Ultimately, an ALJ's decision to give lesser weight to a treating physician's opinion is afforded great deference so long as the ALJ minimally articulates her reasons for doing so. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). The Seventh Circuit has deemed this very deferential standard to be "lax." *Id.*

It is true that Dr. Utes' conclusory opinion that Stigen was "unable to work" due to his asthmatic bronchitis was "not conclusive on the ultimate issue of disability, which is reserved to

12

the Commissioner." *Johansen v. Barnhart*, 314 F.3d 283, 288 (7th Cir. 2002). But the ALJ appears to have rejected not only this conclusion but any opinions of either Dr. Barnes or Dr. Utes that supported the notion that Stigen could not sustain any work activities. The ALJ mentioned a few of these underlying opinions and conclusions. For instance, he accepted that both Dr. Barnes and Dr. Utes included environmental restrictions in their functional capacity assessments. He also noted that Dr. Barnes opined that Stigen would require three to four unscheduled breaks a day and be absent from work about three times a month. With regard to these latter restrictions, the ALJ simply noted that he considered Dr. Barnes' opinion consistent with an inability to sustain work activities. The ALJ did not mention at all Dr. Barnes' other specific opinions that Stigen could not stand or walk for more than two hours out of an eight-hour work day, could not stand for more than one hour continuously, and could only walk two to three blocks without rest. Finally, the ALJ makes no mention of Dr. Utes' August 2010 residual functional capacity evaluation, which was virtually identical to Dr. Barnes' opinion and included similar limitations on standing and walking.

The only explanation that the ALJ gave for his decision to reject all of the treating physicians' opinions (except the environmental restrictions) was that the objective medical evidence—consisting of normal pulmonary function tests and adequate exercise capacity—as well as the overall improvement in the frequency of Stigen's conditions was inconsistent with "opinions of a complete inability to sustain work activities." (Tr. 23). This explanation is inadequate to justify the ALJ's decision to reject pertinent treating physicians' opinions and fails to meet even the Seventh Circuit's "lax" test.

The ALJ's treatment of Dr. Barnes' opinion as essentially nothing more than a conclusory opinion that Stigen was "unable to work" was inappropriate. Dr. Barnes did not opine that Stigen was completely unable to work; rather, she believed that he had certain specific functional limitations, including the amount of standing and walking and the number of unscheduled breaks and absences from work. The ALJ nowhere explains why these specific limitations (rather than a complete inability to work) were inconsistent with the objective evidence and excluded from the VE hypothetical.

In fact, the ALJ nowhere even mentions Dr. Barnes' or Dr. Utes' opinions that Stigen was limited in his ability to stand or walk for more than two hours a day or walk more than two or three blocks at a time. These opinions are consistent with Stigen's testimony that he cannot walk more than two or three blocks, which was also not mentioned in the ALJ's' opinion. It may be that the ALJ indeed believes that these functional limitations are entirely unsupported by the objective evidence, but he must do more to draw a logical bridge from the evidence to his conclusions. As it is, the Court has no indication that the ALJ ever considered whether Stigen was in any way limited in his ability to stand or walk, or whether any such restrictions were compatible with a medium work classification.

**B.      The Case Must be Remanded to the Commission for Further Proceedings**.

Having concluded that the ALJ failed to build the required logical bridge from the evidence to his conclusion, the case must be remanded to the Commissioner for further proceedings. Stigen asks for more, asserting that he "should be awarded benefits and the decision of the [ALJ] should be reversed." He provides precious little explanation, however, for why that result should follow. Stigen does not contend that Dr. Utes' and Dr. Barnes' opinions were

entitled to controlling weight. *See* Reply Brief, DE 23 at 4. The ALJ may have failed to seriously consider the treating physicians' opinions—the Court cannot tell without more articulation of the reasons—but at this point the remedy for that problem is further consideration, not an award of benefits.

On remand, the ALJ should carefully explain what weight is afforded Dr. Barnes' and Dr. Utes' specific opinions regarding Stigen's disability, especially limitations of his ability to stand or walk, taking into account the various factors enumerated in 20 C.F.R. § 416.927(c) regarding the weight afforded to treating physicians' opinions. The ALJ should also provide a fuller explanation for his opinion that Stigen's testimony regarding the persistence and limiting effects of his symptoms was not credible, and what consideration (if any) is given to Stigen's physical condition at the hearing. Finally, the Court suggests that it would be prudent to obtain vocational advice regarding Stigen's alleged limitations, alone or in combination, even if the ALJ ultimately concludes that some limitations are not supported by the record.

## V. Conclusion

For the foregoing reasons, the Court **DENIES** Stigen's request that the Court find that he is entitled to disability benefits but **GRANTS** his request to remand the ALJ's decision. Accordingly, the Court now **REMANDS** this case to the Commissioner for further proceedings consistent with this Opinion and Order.

SO ORDERED

ENTERED:   June 25, 2013

/s/ JON E. DEGUILIO
Judge
United States District Court